(No. 6129.   April 5, 1935.)

ROY SAMUEL REDMON and VERA REDMON, His Wife, Respondents, v. INTERMOUNTAIN BUILDING & LOAN ASSOCIATION, a Corporation, Appellant.

[43 Pac. (2d) 510.]

W. H. Langroise and Sam S. Griffin, for Appellant.

George Donart, for Respondents.

HOLDEN, J.—Appellant is, and since November, 1920, has been, a mutual building and loan association, organized and operating as such under the laws of the state of Utah. January 16, 1922, respondent Roy Samuel Redmon made application to appellant for sixty, and respondent Vera

Redmon for twenty, shares of "Investors Guaranteed Dividend Stock." January 23, 1922, a certificate was issued to respondent Roy Samuel Redmon for sixty, and January 30, 1922, a certificate issued to Vera Redmon for twenty, shares of such stock. At the time the certificates were issued Mr. Redmon paid appellant the sum of $180 on his certificate, and Mrs. Redmon paid the sum of $60 on the certificate issued to her. The certificates are identical, except as to dates, number of shares, amounts and person to whom issued. The certificate issued to Vera Redmon was for the face value of $2,000, and required the payment of monthly instalments of $10, and that issued to Roy Samuel Redmon was for the face value of $6,000, and required the payment of monthly instalments of $30.00. The latter certificate is in the following words and figures:

"THIS IS TO CERTIFY, That Roy Samuel Redmon is the owner of Sixty shares of Investors Guaranteed Dividend Stock of the INTERMOUNTAIN BUILDING & LOAN ASSOCIATION, a Utah Corporation, of the matured or par value of One Hundred Dollars ($100) per share transferable only upon the books of the association by the holder hereof in person or by attorney, upon surrender of this certificate properly indorsed; that there was paid at the time this certificate was issued the sum of One Hundred & Eighty Dollars ($180.00) and that the sum of Thirty Dollars ($30.00) is to be paid on the first day of each and every month after date hereof until such payments together with interest earned and dividends declared, shall equal One Hundred ($100) per share. Eight per cent (8 per cent) interest, compounded semi-annually, shall be credited to the book value hereof. Additional earnings of the association shall be declared as dividends and credited as provided by the amended articles of incorporation, by the by-laws of the association and pursuant to the acts of the Board of Directors. The association hereby promises to pay, in the manner provided by its amended Articles of Incorporation and By-laws, to the registered owner, hereof, at maturity, upon presentation and surrender of this certificate, at its

offices in Salt Lake City, Utah, the sum of Six Thousand Dollars ($6000.00).

"This certificate is subject to the provisions of the amended Articles of Incorporation and By-laws of the association and the privileges, terms and conditions on the back hereof, which are made a part hereof as fully as if set forth on the face of this certificate.

"IN WITNESS WHEREOF, the Intermountain Building & Loan Association has caused this certificate to be executed in its corporate name and its corporate seal to be thereto affixed at Salt Lake City, Utah, this 23rd day of January, 1922.

"INTERMOUNTAIN BUILDING & LOAN ASSOCIATION.

"By DAVID ALEXANDER, Vice Preident.

"Attest: THORVALD L. LARSEN, Secretary."

Following the issuance of the certificate, Redmon regularly paid appellant, as provided by the certificate, the sum of $30 for a period of 129 months, and Vera Redmon regularly paid appellant, as provided in her certificate, the sum of $10 for a period of 129 months. At the time of making a remittance of $40 to cover the 129th monthly instalment on the certificates, to wit, June 13, 1932, respondents requested payment of the certificates. Appellant failed to pay the certificates as requested, and respondents, thereafter, January 25, 1933, caused such certificates to be presented to, and demand made upon, appellant for payment thereof at the home office of appellant in Salt Lake City. Appellant refused to comply with the demand for payment. Respondents, therefore, on January 31, 1933, commenced this action against appellant, upon the certificates, to recover the face value thereof, together with interest thereon at the rate of 7 per cent per annum from January 25, 1933.

The first cause of action, set forth in the complaint of respondents, declared upon the certificate issued to respondent Roy Samuel Redmon, and, among other things, alleged: That respondents were husband and wife; that the stock certificates were purchased with community funds; that

appellant is a corporation, organized and existing under and by virtue of the laws of the state of Utah, with its principal place of business in Salt Lake City, and that it was duly authorized to transact business in the state of Idaho; that January 23, 1922, appellant sold and delivered to Roy Samuel Redmon stock certificate No. 2451, denominated ''Investors' Guaranteed Dividend Stock Certificate'', evidencing the ownership of sixty shares of guaranteed dividend stock of the matured or par value of $100 per share, by the terms and provisions of which it agreed that in consideration of the payment of $180 by Roy Samuel Redmon to appellant, coincident with the execution and delivery of the certificate, and the further payment of $30 per month, to be paid the first day of each and every month thereafter until such payments, together with dividends earned and declared, and interest compounded semi-annually upon said payments at the rate of 8 per cent per annum, would equal the sum of $100 per share, or $6,000 for said sixty shares, appellant would pay Roy Samuel Redmon, at its office at Salt Lake City, Utah, upon the surrender and cancelation of the certificate, the sum of $6,000; that said certificate provided that 8 per cent interest, compounded semi-annually, should be credited to the value of said certificate, and the additional earnings of the Association should be declared as dividends and credited to the value of said certificate; that pursuant to the terms of said agreement, Roy Samuel Redmon, as provided in said certificate, paid, at the time of the issuance thereof, to appellant, the sum of $180, and monthly thereafter, on the first day of each and every month, also paid the sum of $30 to appellant for a period of 129 months, which said payments, together with interest compounded semi-annually, at the rate of 8 per cent, amounted to more than the matured or par value of said certificate, without requiring the application of any portion of the earnings of appellant; that January 25, 1933, respondents presented the said certificate to the home office of appellant at Salt Lake City, and demanded payment of the face value thereof, but that appellant refused to pay the

amount due respondents, or any part thereof; that respondents were the owners and holders of the certificate, and that it was the community property of respondents; that no part of the certificate, and the amount due thereon, had been paid to respondents, and that there was due, owing and unpaid from appellant to respondents, upon said certificate, the sum of $6,000, together with interest at the rate of 7 per cent per annum from January 25, 1933, together with such further sum as may have been earned as additional earnings or declared as dividends on the certificate.

The second cause of action declared upon the certificate issued to Vera Redmon, and was identical with the first cause of action, with the exception of the name, date, number of the certificate, number of shares and the face value.

Appellant answered, admitting that respondents were husband and wife; that Roy Samuel Redmon, at the time of the issuance of the certificate, paid the sum of $180, and thereafter made 129 monthly payments of $30 each; admitted that demand for payment of the face value of the certificate had been made, and that it refused to pay at maturity the value of the certificate.

As a separate defense to both causes of action, appellant alleged that it was and is a building and loan association, organized under the laws of the state of Utah, and that it had at all times operated as a mutual building and loan association under the laws of that state. Appellant further alleged that it was expressly provided in the certificates that they were subject to the provisions of the amended articles of incorporation and by-laws of appellant, and that it was further provided in the certificates that the maturity value would be paid in the manner provided by the amended articles of incorporation and by-laws of appellant, which were attached to and made part of the separate answer, and appellant pleaded the applicable statutes of the state of Utah; that at the time of the subscriptions to said stock, represented by said certificates, respondents thereupon became members and stockholders of appellant building and

loan association, and thereby became entitled to share proportionately in the profits, and bound and obligated to share proportionately in the losses of the association, with the other subscribers for stock and members of appellant association; that upon the execution of the subscriptions for the purchase of said stock, respondents agreed to pay reasonable membership fees, and agreed to be governed by the charter and by-laws of the association, and that pursuant to said agreement appellant charged and deducted from the payments made by respondent Roy Samuel Redmon the sum of $420 on his certificate No. 2451, and charged and deducted from the payments made by respondent Vera Redmon the sum of $140, as membership fees. It was further alleged by appellant that the payments made by respondents, together with the profits of the association, arising from loans, after deducting membership fees, operating expenses and other alleged authorized deductions, did not equal the maturity value specified in the certificates; that the certificates had not matured, and were not subject to payment, except as withdrawals, and that the required withdrawal notice had not been given.

The case was tried before the court, sitting without a jury. The appeal is from a judgment in favor of respondents and against appellant for the sum of $8,324.

In passing upon the questions presented on this appeal, we deem it necessary to examine *Fisher v. Intermountain Building & Loan Assn., ante,* p. 326, 42 Pac. (2d) 50, for the purpose of determining to what extent, if at all, that case is controlling in the case now under consideration. It appears that May 25, 1921, the appellant here issued to E. W. Fisher a certificate for twenty shares of "Investors Guaranteed Dividend Stock," of the matured or par value of $100, and it further appears that the certificate issued to Fisher and the certificates issued to the Redmons are alike in terms, with the exception that on the face of the Fisher certificate it is stated that: "The association hereby promises to pay, in the manner provided by its

articles of incorporation and by-laws, to the registered owner hereof, at maturity, upon presentation and surrender of this certificate, at its offices in Salt Lake City, Utah,'' the face of the certificate, while on the face of the Redmon certificates the association promises to pay in the manner provided by its · ''amended'' articles of incorporation and by-laws, and there is a further difference between the Fisher certificate and the Redmon certificates, in that the Fisher certificate reads upon its face that: ''This certificate is subject to the provisions of the articles of incorporation and by-laws of the association and the privileges, terms and conditions on the back hereof, which are made a part hereof as fully as if set forth on the face of this certificate,'' while the Redmon certificates provided on their face that they were subject to the provisions of the ''amended'' articles of incorporation and by-laws of the association, etc. And the conditions printed upon the back of the Fisher certificate and those printed on the backs of the Redmon certificates are alike with the exception that on the backs of the Redmon certificates the following is printed: ''Miscellaneous: The term 'book value' as used in this certificate refers to the value of this certificate as shown on the general books of this association, and does not refer to the pass book issued to the certificate holder.''

Fisher paid $20 upon the issuance of his certificate, and $10 per month to April, 1932, and then and thereafter demanded payment of the full face value of the certificate. The association, appellant here and also in the Fisher case, refused payment, whereupon Fisher sued to recover the full face value of his certificate.

Appellant in the Fisher case pleaded the original articles of incorporation, by-laws, pertinent building and loan association statutes of the state of Utah, and amendments thereof; contended therefrom that Fisher's request for payment was premature; that he was not guaranteed 8 per cent interest on his progressive investment, compounded semiannually; that Fisher was only entitled to share in the profits, bear his share of the losses, and was subject to a

membership fee; that appellant contracted to pay 8 per cent
interest, compounded semi-annually, upon the amount stand-
ing to the credit of the Fisher stock upon the books of the
association; that is to say, appellant contended that it con-
tracted to pay Fisher 8 per cent interest on his progressive
investment, compounded semi-annually, on the book value
of the Fisher stock, plus earnings and dividends declared,
if any, less "loadings, membership fees, fines, penalties, etc.,
not exceeding two percent per annum on par value, and not
exceeding an additional ten percent of par value, for all
expenses, losses and commissions." Appellant further con-
tended in the Fisher case that to construe the Fisher con-
tract to mean that "whether earned or not, whether expense
was incurred or not, come what may, the appellant un-
equivocally agreed to pay and credit to the value of the
(Fisher) shares 8 per cent interest, compounded semi-
annually, upon each, every and all monthly payments made
by respondent (Fisher)" would destroy the "essence of
building and loan associations," i. e., "mutuality, participa-
tion in earnings, sharing of expenses and losses, non-pref-
erence of one member over or at the expense of other
members." It was also contended that after Fisher pur-
chased his stock, the statutes of Utah and the articles of
incorporation and by-laws of appellant were amended so as
to remove the preference as to Fisher's stock (without con-
ceding that there was any such original preference), and
placed Fisher's stock in the same class with other stock, en-
titled only to share in the net profits, which contention was
based upon provisions printed on the face of the Fisher
certificate, that it was "subject to the provisions of the
articles of incorporation and by-laws of the association, and
the privileges, terms and conditions on the back hereof,
which are made a part hereof as fully as if set forth on the
face of this certificate," and also upon the provision in the
articles of incorporation and by-laws that they could be
amended from time to time, and, further, that Fisher, by
reason of his stock, had a vote for every share; that the

Fisher contract consisted of the certificate of stock issued to him, appellant's articles of incorporation and by-laws, and the laws of Utah, and that all must be read together, and that "so read together, the whole contract required Fisher to make monthly payments, of which a portion was to be used for corporate expense, and the balance to constitute book value of respondent's (Fisher's) shares, upon which interest earned to 8 per cent, compounded semi-annually, guaranteed by the Guaranty Fund, together with any additional earnings declared as dividends shared with guaranty shares, was to be credited until the whole of such book value equalled $100.00 per share, whereupon the corporation would pay such matured book value in the manner provided, to-wit, after thirty days written notice, out of one-half monthly receipts in the order of registration of notices"; that "where, as here (in the Fisher Case), the contract provides for payment on maturity, after notice, out of a particular fund, in order of registration notices, there can be no recovery without allegation and proof of maturity, notice, existence of available funds, and that order of payment has arrived; otherwise, there has been no breach of contract, and the action is premature"; that Fisher sought to convert the contract into a "promissory note of the appellant by which it agrees to repay to respondent (Fisher) all his payments, together with 8 per cent semi-annual compounded interest thereon, at a fixed determinable date"; that maturity of the Fisher contract had not arrived, and, therefore, that the Fisher certificate was not "presently payable," and that the only basis upon which Fisher could recover was upon "the theory of withdrawal before maturity," and that to entitle Fisher to a withdrawal he would have to give thirty days' notice, and prove that sufficient funds were available for payment.

It will be observed from the foregoing analysis that the issues in the Fisher case, and in the case at bar, are substantially the same.

■ This court, in construing the Fisher contract, held that the Fisher Guaranteed Dividend Stock was not chargeable with "loadings, membership fees, fines, penalties, commissions or losses"; that such stock was put in a class by itself, and, in effect, that it was preferred stock, and that the statutes of Utah did not prohibit such classification; that under his contract Fisher was entitled to receive 8 per cent interest on his progressive investment, compounded semi-annually, and to share in additional earnings of the association to be declared as dividends, and that to so construe the Fisher contract did not destroy the mutuality and parity between stockholders, and that Fisher was entitled to have his certificate paid in full, as matured, and that it was not governed by provisions relative to withdrawals; that the Fisher contract could not be impaired or affected by amendments to appellant's articles of incorporation and by-laws, and the statutes of Utah; and, broadly speaking, this court held against appellant in the Fisher case on all its contentions.

In the case at bar, the respondents, under their contracts with appellant, were entitled to receive 8 per cent interest on their progressive investment, compounded semi-annually, and to share in additional earnings of the association, if any, to be declared as dividends, and while Article VI of the original articles of incorporation of the association provided for two classes of stock, Guarantee Stock and Investors Guaranteed Dividend Stock, and the amended articles in force at the time the Redmon certificates were issued provided for three classes of stock, to wit, Expense Guarantee Stock, Permanent Reserve Guarantee Stock, and Investors Guarantee Dividend Stock, and, while Article IX of the original articles of incorporation of the appellant provided for only two funds, a Guarantee Fund and a General Fund, and amended Article IX, in force at the time the Redmon certificates were issued, provided for three funds, an Expense Guarantee Stock Fund, Permanent Guarantee Stock Fund, and an Investors Guarantee Dividend Stock Fund, and while it was printed on the back of the Redmon certificates, and

not on the back of the Fisher certificate, that the term "book value" referred to the value of the certificates as shown on the general books of the association, and not to the pass-book issued to the certificate holder, these differences do not materially affect the Redmon contracts, or necessitate a construction of the Redmon contracts different from that given the Fisher contract.

After a full and painstaking examination of the record and opinion in the Fisher case, we conclude that it is controlling in the case at bar.

There remains for consideration an offer made by appellant, and denied by the trial court, to prove that respondents paid membership fees in the total sum of $560. Under the rule announced in the Fisher case, *supra*, applicable here, to the effect that the Fisher "Investors Guaranteed Dividend Stock" was not chargeable with "loadings, membership fees, fines, penalties, commissions or losses," the lower court properly denied the offer of proof.

It follows that the judgment must be affirmed, and it is so ordered, with costs to respondents.

Givens, C. J., Budge, J., and Barclay and Sutphen, D. J., concur.